IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**L.B.**, a minor by and through her parents and natural guardians, Matthew Booth and Jennifer Booth,

*Plaintiff,*

v.

**SIMPSON COUNTY SCHOOL DISTRICT**; the **BOARD OF EDUCATION OF SIMPSON COUNTY, MISSISSIPPI**; **GREG PAES**, Superintendent of the Simpson County School District, in his official and individual capacities; **ROBERT SANDERS**, Assistant Superintendent of the Simpson County School District, in his official and individual capacities; and **ANTOINETTE WOODALL**, Principal of Simpson Central School, in her official and individual capacities,

*Defendants.*

Civil Case No.: 3:20-cv-704-HTW-LRA

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff L.B., by and through her parents and natural guardians, Matthew Booth and Jennifer Booth, and for her Verified Complaint against Defendants, hereby states as follows:

### INTRODUCTION

1.   This is a civil rights action seeking to vindicate the constitutional rights of L.B., an elementary school student at Simpson Central School ("SCS") who was prohibited from displaying the message "Jesus Loves Me" on a face mask at school.

2.   This is a picture of the mask L.B. desires to wear:



3.    Matthew Booth and Jennifer Booth bring this action on behalf of their minor child L.B.

4.    L.B. is seeking injunctive relief, declaratory relief, and nominal damages, pursuant to 42 U.S.C. §§ 1983 and 1988, against the Simpson County School District and the Board of Education of Simpson County, Mississippi for violating her rights and the rights of other students under the First Amendment and Fourteenth Amendment.

5.    Pursuant to their policies and practice, Defendants permit students to convey a multitude of messages concerning virtually unlimited topics on their masks at SCS. L.B. has observed many of her schoolmates wearing masks with messages on them.

6.    On October 13, 2020, school officials forced L.B. to remove her mask with the "Jesus Loves Me" message when she wore it to SCS.

7.    L.B.'s "Jesus Loves Me" mask caused no disruptions at SCS.

8.    Defendants prohibited L.B. from wearing her "Jesus Loves Me" mask pursuant to their Religious Speech Policy that prohibits messages on masks that are "political, religious, sexual or inappropriate symbols, gestures or statements that may be offensive, disruptive or deemed distractive to the school environment" (the "Religious Speech Policy").

9.    Defendants' censorship of L.B.'s religious message, and the Religious Speech Policy and practice on which that censorship was based, violate the First and Fourteenth Amendments to the United States Constitution.

10.    Preliminary injunctive relief is necessary because L.B. desires to immediately wear her "Jesus Loves Me" mask, and masks with similar religious messages, to school but is self-censoring her speech because Defendants have enforced and will continue to enforce their Religious Speech Policy against her, which will subject her to the escalating discipline outlined in those policies for repeat infractions, up to and including suspension.

## JURISDICTION & VENUE

11.    This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

13.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

14.    Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and because all of the acts giving rise to this action occurred in this district.

## PLAINTIFF

15.    L.B., a minor, is a third-grade student at Simpson Central School and, at all times relevant to this Complaint, a resident of Simpson County, Mississippi.

16.     Matthew and Jennifer Booth are L.B.'s parents and natural guardians and, at all times relevant to this Complaint, residents of Simpson County, Mississippi.

17.     L.B. is an adherent of the Christian faith and desires to share her religious views with her schoolmates.

18.     Pursuant to her sincerely held religious beliefs, L.B. desires to wear masks to SCS with positive and uplifting religious messages, like the "Jesus Loves Me" mask Defendants barred her from wearing.

## DEFENDANTS

19.     The Simpson County School District (the "District" or "SCSD") is established, organized, and authorized to operate as a political subdivision of Mississippi. Miss. Stat. Ann. § 37–6–5.

20.     As a political subdivision, the District may sue and be sued. Miss. Stat. Ann. § 11–46–1(i).

21.     The Board of Education of Simpson County, Mississippi (the "Board") is the governing entity of the District. Miss. Stat. Ann. § 37–6–7.

22.     The Board is also established, organized, and authorized to operate as a political subdivision of Mississippi. Miss. Stat. Ann. § 37–6–7.

23.     As a political subdivision, the Board has the capacity to sue and be sued. Miss. Stat. Ann. § 11–46–1(i).

24.     The Board is charged, inter alia, with the administration, operation, and supervision of all schools within the District, including SCS. Miss. Stat. Ann. § 37–7–301.

25.     The Board is charged with the formulation, adoption, implementation, and enforcement of Board policies, including the Religious Speech Policy challenged herein. Miss. Stat. Ann. §§ 37–7–301(e), (l).

26.     The Board is responsible for the enactment, enforcement, and existence of policies and practices related to student expression, including the Religious Speech Policy challenged herein.

27.     Mississippi statutes specifically empower the Board to establish policies for the selection and implementation of discipline and classroom management at SCS, including the authority to establish and enforce the Religious Speech Policy at Mississippi public schools. *See* Miss. Stat. Ann. §§ 37–7–301(e), (l); *see also* SCSD Policy ABA ("The Simpson County School Board exercises legislative authority over this school district . . . . It determines policy, delegates executive, supervisory and instructional authority to its employees . . . ."). A true and correct copy of SCSD Policy ABA is attached as Exhibit 1.

28.     The Board has designated Defendant and Superintendent Greg Paes as the individual responsible for implementing board policy in the daily operations of the school district. SCSD Policy ABA ("The school board shall concern itself primarily with broad questions of policy and with the appraisal of results, rather than with administrative details. The application of the policies shall be an administrative task to be performed by the superintendent and his/her staff who shall be held responsible for the effective administration and supervision of the entire school system.").

29.     The Board has delegated to Defendant Paes the authority to "implement the decisions of the school board," which includes broad power to manage and delegate "student disciplinary matters" to assistant superintendents and school principals, among others. SCSD Policy CEB §§ 1, 2.r. A true and correct copy of SCSD Policy CEB is attached as Exhibit 2.

30.     The Board retains broad supervisory authority over Defendant Superintendent Paes, the assistant superintendents, the principal of each school in the District, and all other staff for the District.

5

31.    The District and the Board were and are aware of the enforcement of certain SCSD policies, including the Religious Speech Policy, and their application to student speech.

32.    The District and the Board were and are aware that District officials enforced the Religious Speech Policy against L.B. when they prohibited L.B. from wearing the mask with the message "Jesus Loves Me" on it.

33.    The District and the Board enacted the Religious Speech Policy, entitled the "Restart Policy," that prohibits "political, religious, sexual or inappropriate statements" on masks. A true and correct copy of the Restart Policy is attached as Exhibit 3.

34.    School officials were acting pursuant to Board policy in promulgating and enforcing the Religious Speech Policy against L.B.

35.    The Board has ratified and implemented the Religious Speech Policy adopted and enforced by Defendants at SCS. The Board is ultimately responsible for its implementation and enforcement by District employees.

36.    Defendant Paes, as a policy maker, is responsible for the enactment, implementation, and enforcement of the SCSD policies and their application to student speech.

37.    Defendant Paes is responsible for the administration, interpretation, and oversight of certain SCSD policies, including the Religious Speech Policy, and their application to student speech.

38.    Defendant Paes enforced the Religious Speech Policy against L.B. when he issued the letter informing all students and faculty that religious speech was prohibited on masks.

39.    Defendant Paes is sued in his official and individual capacities.

40.     Defendant Robert Sanders is, and was at all times relevant to this Complaint, the Assistant Superintendent of the Simpson County School District, a public school district organized pursuant to the laws of Mississippi.

41.     Defendant Sanders is responsible for the administration, interpretation, and oversight of certain SCSD policies, including the Religious Speech Policy, and their application to student speech.

42.     Defendant Sanders enforced the Religious Speech Policy against L.B. when he modified the Restart Plan to include the prohibition on religious speech on masks and when he affirmed Defendant Woodall's decision to prohibit L.B. from wearing the mask with the message "Jesus Loves Me."

43.     Defendant Sanders is sued in his official and individual capacities.

44.     Defendant Antoinette Woodall is, and was at all times relevant to this Complaint, the Principal of the Simpson Central School, a public school organized pursuant to the laws of Mississippi.

45.     Defendant Woodall is responsible for the enforcement of certain SCSD policies, including the Religious Speech Policy, and their application to student speech.

46.     Defendant Woodall enforced the Religious Speech Policy against L.B. when she prohibited L.B. from wearing the mask with the message "Jesus Loves Me" on it.

47.     Defendant Woodall is sued in her official and individual capacities.

48.     All Defendants prohibited L.B. from wearing her "Jesus Loves Me" mask pursuant to the Religious Speech Policy and practice challenged herein.

49.     All Defendants are responsible for the implementation and application of the Religious Speech Policy and practice by school employees.

## Factual Allegations

### I.  Defendants' Religious Speech Policy

50.    SCS is a public elementary school located in Pinola, Mississippi.

51.    SCS is under the direction and control of the Defendants.

52.    Defendants are the official policymakers for the District and have enacted and are responsible for the Religious Speech Policy challenged herein and its enforcement against L.B.

53.    On July 23, 2020, the Board approved SCSD Restart Plan for the 2020–2021 School Year (the "Original Restart Plan"). A true and correct copy of the Original Restart Plan is attached as Exhibit 4.

54.    The Original Restart Plan provides that "Masks will be required to be worn by students and all personnel in all common spaces." Exhibit 4 at 10.

55.    The Original Restart Plan was later modified to include the following provision related to masks: "(No political, religious, sexual or inappropriate statements are allowed on mask)." Exhibit 3 at 10.

56.    Students that violate the Religious Speech Policy are subject to escalating discipline for multiple infractions.

57.    The SCSD Parent/Student Handbook specifies that a student's disregard of authority or failure to obey posted rules is a Level A violation subject to an assertive discipline plan, and that continued violation is a Level B offense with punishment of suspension or corporal punishment. A true and correct copy of the SCSD Parent/Student Handbook is attached as Exhibit 5.

58.    Under the Religious Speech Policy, school officials can censor expression that they deem "offensive," even if this expression is not materially and substantially disruptive.

8

## II.  L.B.'s Desired Expression

59.      L.B. is a nine-year old student currently enrolled at SCS.

60.      L.B. is in the third grade.

61.      L.B. is an adherent of the Christian faith.

62.      As part of her Christian faith, L.B. believes that Jesus loves people and wants people to trust in Him.

63.      L.B.'s sincerely held religious beliefs compel her to share her religious beliefs and views with her classmates.

64.      One way that L.B. desires to accomplish this goal is by wearing clothing, including masks, displaying religious messages, like the "Jesus Loves Me" mask that Defendants censored.

## III.  Censorship of L.B.'s Expression

65.      On Thursday, October 8, 2020, acting on her desire to express her religious beliefs to her classmates, L.B. decided to wear a mask with the message "Jesus Loves Me."

66.      "Jesus Loves Me" was the only message displayed on L.B.'s mask.

67.      Pursuant to the Religious Speech Policy challenged herein, Defendants regularly permit L.B.'s schoolmates to wear masks, with messages on them. Following are just a few examples of the messages and designs Plaintiff and her parents have observed on other students' and faculty's masks:

68.      Jackson State University logo;

69.      New Orleans Saints logo;

70.      "Black Lives Matter."

71.      Almost every school day, multiple students and faculty in the Simpson County School District wear masks with some sort of expressive message on them.

72.     Just as these other students and faculty wear masks with expressive messages to share their beliefs and views with their classmates, L.B. wore her "Jesus Loves Me" mask to do the same.

73.     During her computer class on October 8, 2020, the teacher told L.B. that she could not wear a mask with words on it. But the teacher did not require L.B. to remove the mask.

74.     After school, L.B. told her mother, Jennifer Booth, that the teacher said she could not wear a mask with words on it.

75.     Jennifer was confused because L.B. had worn the same mask several times without any prior incidents. Further, Jennifer had personally seen many students wearing masks with various messages.

76.     Jennifer began researching the school's policies to determine whether there was a policy prohibiting words on face masks. Jennifer was unable to find any such policy.

77.     Jennifer posted a private message on Facebook describing the incident to determine whether any of her friends was aware of a school policy prohibiting words on face masks.

78.     In the comments section, Jennifer stated that L.B. would be wearing the "Jesus Loves Me" mask the following Tuesday because she could not find a rule prohibiting words on face masks.

79.     On Tuesday, October 13, 2020, shortly after class began, Defendant and SCS Principal Antoinette Woodall stuck her head in L.B.'s class. Defendant Woodall called out L.B.'s name. When L.B. turned her head, Defendant Woodall winked at her and then left.

80.     Prior to lunch, the teacher's assistant asked L.B. to put on another mask before they went to the cafeteria so that "no one sees her."

81.     Pursuant to the teacher's assistant's order, L.B. picked out a new mask with a panda on it.

82.     L.B. was forced to wear the replacement mask for the remainder of the day.

83.     Except for Defendant Woodall's determination that the message "Jesus Loves Me" was "religious," L.B.'s mask complied with all other applicable provisions of Defendants' policies.

84.     During the time L.B. wore her mask on October 13, 2020, its message caused no disruptions.

85.     During the time L.B. wore her mask on October 13, 2020, no student became visibly upset or distracted by its message.

86.     During the time L.B. wore her mask on October 13, 2020, no student objected to its message.

87.     L.B. had worn the "Jesus Loves Me" mask to SCS multiple times prior to October 13, 2020, and it did not cause any disruption whatsoever on those days.

## IV.  Defendants give inconsistent explanations for their censorship and eventually ban all religious speech on masks.

### A. Defendant Principal Woodall removes L.B.'s mask and says that it violates the school's prohibition on obscene language.

88.     On October 13, 2020 at 9:32 a.m., Defendant Woodall called Jennifer to inform her that L.B. had been required to wear a replacement mask.

89.     Defendant Woodall told Jennifer that she became aware L.B. would be wearing the "Jesus Loves Me" mask that day because someone informed her of Jennifer's private Facebook post in which Jennifer stated that L.B. would be wearing the mask that day.

90.     Defendant Woodall told Jennifer that the student handbook prohibits religious messages on masks.

11

91.    Jennifer asked Defendant Woodall to identify the specific policy.

92.    Defendant Woodall referenced the "Dress Code for Students" policy which prohibits "clothing advertising alcoholic beverages or drug culture, clothing with obscene language or gestures or clothing of any suggestive nature."

93.    Jennifer responded that this policy does not apply to the message on L.B's mask because "Jesus Loves Me" is not obscene and does not reference alcohol or drugs.

94.    Defendant Woodall reiterated that the student handbook prohibited religious messages and said that she would reach out to Defendant Assistant Superintendent Robert Sanders to obtain the specific policy.

95.    After the call with Defendant Woodall, Jennifer read through the student handbook again to verify that it did not prohibit religious messages on masks.

96.    Early that afternoon, Jennifer sent the following email to Defendants Superintendent Paes and Principal Woodall, which states in part:

> I am requesting my child return to wearing her mask TODAY and have an apology to her from the school district. According to the Mississippi Student Religious Freedom Act that took effect July 1, 2013 you are prohibited from discriminating against students by their expression of religious perspectives. There isn't any policy mentioned in the handbook that goes against this 1st amendment right for my child. In fact this religious freedom act is mentioned on page 12; and also a students right to free speech on page 13.

A true and correct copy of the email is attached as Exhibit 6.

97.    The school's "Free Speech" policy that Jennifer referenced provides that the District "recognizes a student's right to free speech provided it is exercised in a manner which is not prohibited by law nor disrupts the educational process." A true and correct copy of the Free Speech policy is attached as Exhibit 7.

98.    The Parent/Student Handbook incorporates the Mississippi Student Religious Freedom Act and states that the Act "prohibits local school districts from discriminating against students based on their expression of religious perspectives."

Parent/Student Handbook, Exhibit 5 at 12; *see* Miss. Stat. Ann. § 37–12–3 ("A public school district shall not discriminate against students or parents on the basis of a religious viewpoint or religious expression.").

99.     Thirty minutes after receiving the email, Defendant Woodall responded simply: "I have forwarded this to our district office personnel." Exhibit 6.

100.     Defendant Woodall did not substantively respond to any of Jennifer's requests.

101.     L.B. was wearing the replacement mask when Jennifer picked her up from school that day. L.B was visibly upset because she was unable to wear her mask with the "Jesus Loves Me" message on it.

102.     As of the afternoon of October 14, Defendants had not yet responded to the requests in Jennifer's October 13 email.

### B. The School District misrepresents that the Original Restart Plan bans all religious expression on masks.

103.     On October 14 at 1:44 P.M., Jennifer sent the following email to Defendant and Assistant Superintendent Robert Sanders, which states in part:

> I'm sure you have seen or heard of the issue; Dr Woodall let me know that she was forwarding my email to her and Greg Paes to Central Office.  And even after I requested kindly that [L.B.] return to wearing her own mask; I picked my child up with her wearing the replacement mask.  When Dr Woodall called earlier that day, we were having issues finding exactly where this was in violation of any rules in the handbook other than my daughters religious liberties and freedom of speech (which I found after the call).  I need to understand how my daughter, or any child for that matter, is in violation of handbook rules for representing their faith without pressuring others? [L.B.] has worn this mask multiple times; worn t-shirts; i've seen other children wear 'words' on their mask; crosses; tshirts with it....why is this an issue? how is this disturbing education other than my child being hunted down to verify she was wearing her Jesus mask again after they were notified of my PRIVATE FB post last Thursday-(a matter I was hoping was a one time incident)? Dr Woodall assured me that my child was not singled out....but I'd like to know whether or not staff regularly go around classroom to classroom checking for 'words' on masks?  Especially for a specific child; with a specific mask.  I am incredibly saddened and very disturbed that our small town has entered into this

13

madness. . . . All I ask is for the district to apologize to my child; for making her feel like representing her faith is wrong; and allow her to wear her very un-offensive and positive belief if she so chooses without it being an ordeal. You can ask anyone around that knows us personally; [L.B.] loves her JESUS and He loves her as the mask states! If you would like to call to discuss, that would be fine, I emailed because I find it easier to align my thoughts accurately especially with this rather unnerving ordeal.

A true and correct copy of this email is attached as Exhibit 8.

104.     At 2:56 P.M. that same day, Defendant Sanders called Jennifer. He admitted that, contrary to Defendant Woodall's previous assertions, the Student Handbook does not prohibit L.B. from wearing the mask with the "Jesus Loves Me" message on it.

105.     Instead, Defendant Sanders asserted that page 10 of the Restart Plan specifically prohibits masks with "political, religious, or sexual references." He said that the Restart Plan was put on the school district website at the beginning of the year, but that it was no longer on the website. He said that he would send a copy to Jennifer.

106.     Jennifer asked how a religious message on a mask is different than one on a t-shirt. Defendant Sanders said masks were different because the message was "right in your face with a mask."

107.     Defendant Sanders stated that if the district allowed L.B. to wear the "Jesus Loves Me" mask then the district would also have to allow a mask with the message "Satan Loves Me."

108.     Jennifer responded that, although it would be sad, a student should be allowed to wear a mask with the message "Satan Loves Me" if they chose to do so.

109.     Defendant Sanders informed Jennifer that he had sent the Restart Plan to the district's attorney to determine whether the Restart Plan was violating L.B.'s rights. Defendant Sanders stated that he would let Jennifer know when he heard back from the district's attorney.

110.    At 3:14 P.M., shortly after ending their telephone call, Defendant Sanders
sent the following email to Jennifer: "Thank you for your email. I wanted to send
you the document we discussed." The email also attached a copy of the Modified
Restart Plan. Exhibits 3, 8.

111.    Page 10 of the version of the Restart Plan sent to Jennifer by Defendant
Sanders states "Mask will be _required_ to be worn by students and all personnel in
all common spaces. (No political, religious, sexual or inappropriate statements are
allowed on mask)."

112.    After receiving the email from Defendant Sanders, Jennifer searched the
SCSD website for the Restart Plan. The search revealed an archived version of the
Original Restart Plan as approved by the Board. Page 10 of the original version
states: "Mask will be _required_ to be worn by students and all personnel in all
common spaces." The original version does not contain any prohibition on messages
on masks. *See* Original Restart Plan, Exhibit 4.

113.    Jennifer was able to access the metadata for the Original Restart Plan and
the Modified Restart Plan that Defendant Sanders emailed her. A true and
complete video of Jennifer accessing the metadata for the original and modified
plans is attached as Exhibit 9.

114.    The metadata for the Original Restart Plan reveals that it was last
modified on 7/23/2020 at 4:43 P.M. by Robert Sanders with Microsoft PowerPoint
2016. Exhibit 9, at 3:05–4:17.

115.    The metadata for the Modified Restart Plan reveals that it was last
modified on 10/14/2020 at 2:41 P.M. by Robert Sanders with Microsoft PowerPoint
2016. Exhibit 9, at 1:13–2:19.

116.    The only difference between the Original Restart Plan and the Modified
Restart Plan is the addition of this language on Page 10 of the Modified Restart

Plan: "(No political, religious, sexual or inappropriate statements are allowed on mask)."

117.    The metadata reveals that Defendant Sanders modified the Original Restart Plan at 2:41 P.M. to include the prohibition on religious messages—less than an hour after receiving Jennifer's email at 1:44 P.M. Defendant Sanders then telephoned Jennifer at 2:56 P.M. to inform her that the Restart Plan contains the restriction on religious messages on masks. Defendant Sanders then emailed the Modified Restart Plan to Jennifer at 3:14 P.M.

### C. Defendant Superintendent Paes tells all parents and staff in the district that masks cannot have any religious expression.

118.    The next day on October 15, Defendant Paes sent the following letter to all parents, students, and staff in the Simpson County School District:

> The Simpson County School District does not discriminate on the basis of race, color, national origin, sex, religion, disability, marital status or age in admission or access to, or treatment of employment in, its programs or activities. It is the intent of the Simpson County School District to comply with both the letter and the spirit of the law in making certain discrimination does not exist in its policies, regulations and operations.
>
> We will continue to expect all students and staff to wear a mask at all times in common areas to help prevent the spread of the Coronavirus. Masks cannot display political, religious, sexual or any inappropriate symbols, gestures or statements that may be offensive, disruptive or deemed distractive to the school environment. This expectation was outlined in our restart plan and is **specific to masks only.** The principal and Superintendent will be the final authority on the appropriateness of any mask worn to school. Wearing school colors, the school mascot or simply having a blank mask is encouraged. We appreciate your understanding and compliance with these expectations.

A true and correct copy of the letter is attached as Exhibit 10.

119.     Additionally, on October 20, Defendant Woodall stated during morning announcements at SCS that students could not wear masks with religious or political messages.

## V.   Continuing Impact of Defendants' Policies on L.B.

120.     Defendants' Religious Speech Policy challenged herein, and which school officials enforced in censoring L.B.'s religious mask, remain in place and serve to chill and deter L.B.'s (and other students') expression.

121.     Immediately and in the future, L.B. desires to wear her "Jesus Loves Me" mask, and masks with similar religious messages, as a means of sharing her religious beliefs with her fellow classmates.

122.     L.B. is refraining from wearing her "Jesus Loves Me" mask or other masks bearing religious messages, however, out of fear that she will again be found to have violated the Defendants' Religious Speech Policy challenged herein, and thus subjected to punishment, including detention and possible suspension.

123.     L.B.'s fear of punishment severely limits her constitutionally-protected expression at SCS.

LEGAL ALLEGATIONS

124.     Students do not shed their constitutional rights at the schoolhouse gate.

125.     All of the acts of the Defendants, their board members, officers, agents, employees, and servants were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Mississippi.

126.     L.B. is suffering irreparable harm from the conduct of the Defendants.

127.     L.B. has no adequate or speedy remedy at law to correct or redress the deprivation of her rights by the Defendants.

128.     Unless the Defendants' Religious Speech Policy and practice challenged herein are enjoined, L.B. will continue to suffer irreparable injury.

FIRST CAUSE OF ACTION
First Amendment: Freedom of Speech
(42 U.S.C. § 1983)

129.     Plaintiff re-alleges and incorporates herein, as though fully set forth,
Paragraphs 1 through 128 of this Complaint.

130.     The First Amendment's Freedom of Speech Clause, incorporated and made
applicable to the states by the Fourteenth Amendment to the United States
Constitution, prohibits censorship of religious expression.

131.     Non-disruptive, private student expression is protected by the First
Amendment.

132.     L.B.'s religious speech is protected speech under the First Amendment.

133.     L.B.'s expression—wearing a mask with the "Jesus Loves Me" message—
did not and does not materially and substantially interfere with the orderly conduct
of educational activity at SCS.

134.     But pursuant to their Religious Speech Policy and practice, Defendants
have singled out L.B.'s expression and prevented her from displaying her religious
messages on her mask at SCS.

135.     Viewpoint-based restrictions, whether in a public or nonpublic forum, are
unconstitutional.

136.     Content-based restrictions on speech in a public forum are presumptively
unconstitutional and are subject to strict scrutiny.

137.     Time, place, and manner restrictions on speech must be content-neutral,
narrowly tailored to serve a significant government interest, and leave open ample
alternative channels of communication.

138.     Defendants' censorship of L.B.'s religious masks while permitting masks
and shirts with secular messages is viewpoint discrimination, which is
unconstitutional in any type of forum.

139.     Defendants' unequal treatment of L.B.'s religious expression is also a

18

content-based restriction of her speech in an otherwise open forum.

140.    Pursuant to their Religious Speech Policy and practice, Defendants allow students at SCS to wear masks and other clothing with a wide variety of expressive messages during school, including "Black Lives Matter" and masks and shirts promoting many sports teams and different types of products.

141.    Defendants' Religious Speech Policy and practice also impose an unconstitutional heckler's veto because they permit the restriction of protected student expression merely because school officials deem a student's expression "offensive" to others.

142.    Even if considered as a content-neutral restriction, Defendants' censorship of speech only on masks is not narrowly tailored to serve a significant government interest and does not leave open ample alternative channels of communication.

143.    Prior restraints on speech may not delegate overly broad discretion to government decision-makers, may not allow for content based restrictions, must further a compelling government interest, must be narrowly tailored, and must be the least restrictive means available.

144.    Defendants' Religious Speech Policy and practice impose an unconstitutional prior restraint because they vest school officials with unbridled discretion to permit or deny student expression subject to no standards or guidelines, thereby permitting content- and viewpoint-based enforcement of the policies.

145.    Defendants' Religious Speech Policy and practice give unbridled discretion to school officials by permitting them to forbid messages on masks they deem to be "political," "religious," "inappropriate," or "offensive."

146.    Defendants' Religious Speech Policy and practice are overbroad because they sweep within their ambit protected First Amendment expression.

147.    Defendants' Religious Speech Policy and practice are overbroad because

they restrict student speech that does not and will not materially and substantially disrupt the educational process.

148.    The overbreadth of the Defendants' Religious Speech Policy and practice chill the speech of students who might seek to engage in private religious expression through the wearing of religious messages on their clothing.

149.    Defendants have no compelling or legitimate reason that would justify their censorship of the religious message that L.B. seeks to express.

150.    Defendants' Religious Speech Policy and practice are not the least restrictive means of achieving any compelling interest they may allege.

151.    Defendants' Religious Speech Policy and practice are not reasonably related to any legitimate pedagogical concerns.

152.    Censoring students' religious speech per se is not and cannot be a legitimate pedagogical concern.

153.    Defendants' Religious Speech Policy prohibiting "religious" or "offensive" messages on clothing, both facially and as-applied, violates the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

**SECOND CAUSE OF ACTION**
**First Amendment: Free Exercise of Religion**
**(42 U.S.C. § 1983)**

154.    Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 128 of this Complaint.

155.    Defendants' Religious Speech Policy and practice, by expressly targeting and censoring L.B.'s private religious expression, violate L.B.'s constitutional right to the free exercise of religion.

156.    L.B. desires to express her "Jesus Loves Me" message at school on the basis of her sincerely held religious beliefs.

157.    Defendants' Religious Speech Policy and practice substantially burden
L.B.'s free exercise of religion by conditioning her ability to speak on foregoing her
free exercise rights.

158.    Defendants' Religious Speech Policy and practice force L.B. to choose either
to engage in religious speech and be censored and subjected to school discipline, or
to forego her speech and the free exercise of her religion to avoid censorship or
punishment.

159.    Defendants' Religious Speech Policy and practice impose special
disabilities on L.B. due to her religion and her intent to engage in private religious
expression.

160.    The Defendants' interpretation and application of their Religious Speech
Policy and practice chill L.B.'s freedom of religious expression and exercise, both of
which are fundamental rights guaranteed to L.B. by the First Amendment.

161.    These special disabilities placed on L.B. are neither neutral nor of general
applicability.

162.    Defendants' Religious Speech Policy and practice are not neutral because
they may be enforced in manner that targets religious speech, as occurred with
L.B.'s "Jesus Loves Me" mask, and permit school officials to arbitrarily decide what
speech is permitted and what speech is prohibited.

163.    Defendants' Religious Speech Policy and practice are likewise not generally
applicable because they grant school officials unbridled discretion to censor L.B.'s
religious expression while permitting other students to express their messages.

164.    Defendants have no compelling or legitimate reason that would justify
their Religious Speech Policy, and the Religious Speech Policy is not narrowly
tailored to advance any such interest.

165.    Defendants' Religious Speech Policy prohibiting "political," "religious,"
"inappropriate," or "offensive" messages on masks, both facially and as-applied,

violates the Free Exercise Clause of the First Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION
### Fourteenth Amendment: Due Process
### (42 U.S.C. § 1983)

166.     Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 128 of this Complaint.

167.     The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant enforcement officials unbridled discretion.

168.     The arbitrary determination by school officials of what is and is not "political," "religious," "inappropriate," or "offensive" speech violates this norm.

169.     Students of common intelligence must guess as to whether their expression will be deemed "political," "religious," "inappropriate," or "offensive" and thus subject to censorship and punishment.

170.     Defendants' Religious Speech Policy and practice of prohibiting "political," "religious," "inappropriate," or "offensive" messages on masks are vague and allow for unbridled discretion in determining which student speech is permissible.

171.     Defendants' Religious Speech Policy and practice allow school officials to act with unbridled discretion when deciding whether student expression is "political," "religious," "inappropriate," or "offensive."

172.     The discretion given to school officials in Defendants' Religious Speech Policy and practice leaves censorship of student speech to the whim of school officials.

173.     Defendants' Religious Speech Policy prohibiting "political," "religious," "inappropriate," or "offensive" messages on masks, both facially and as-applied, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, and provide Plaintiff with the following relief:

A. That this Court issue a Preliminary and Permanent Injunction enjoining Defendants, their officials, agents, employees, and all persons in active concert or participation with them, from enforcing the Defendants' Religious Speech Policy challenged herein both facially and as-applied so as to prohibit L.B. from wearing a mask with the message "Jesus Loves Me" or similar religious messages at SCS;

B. That this Court render a Declaratory Judgment, declaring Defendants' Religious Speech Policy prohibiting "political," "religious," "inappropriate," or "offensive" messages on masks unconstitutional, facially and as-applied to L.B.'s religious speech;

C. That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy in order that such declarations shall have the force and effect of final judgment;

D. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

E. That this Court grant an award of nominal damages to Plaintiff L.B. in an amount this Court deems appropriate;

F. That this Court grant to Plaintiff L.B. reasonable costs and expenses of this action, including attorneys' fees in accordance with 42 U.S.C. § 1988;

G. That this Court grant the requested injunctive relief without a condition of bond or other security being required of L.B; and

H. That this Court grant such other and further relief as this Court deems just and proper.

23

Respectfully submitted this day of November, 2020.

s/

P. Sharkey Burke, Jr.
MS Bar No. 10436
ANDERSON CRAWLEY & BURKE, PLLC
216 Draperton Court
Ridgeland, MS 39157
Telephone:  (601) 707-8795
Facsimile:  (601) 707-8801
sburke@acblaw.com

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile: (700) 339-6744
dcortman@ADFlegal.org

Michael R. Ross*
TN Bar No. 035304
Tyson C. Langhofer*
KS Bar No. 19241
ALLIANCE DEFENDING FREEDOM
20116 Ashbrook Pl., Ste. 250
Ashburn, VA 20147
Telephone:  (571) 707-4655
Facsimile:  (571) 707-4656
mross@ADFlegal.org
tlanghofer@ADFlegal.org

*Attorneys for Plaintiff*
*\*Pro Hac Vice application forthcoming.*

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

s/

P. Sharkey Burke, Jr.
*Attorney for Plaintiff*

## DECLARATION UNDER PENALTY OF PERJURY

I, Jennifer Booth, a citizen of the United States and a resident of the State of Mississippi, declare under penalty of perjury under 28 U.S.C. § 1746 that the above I true and correct to the best of my knowledge.

Executed this __30__ day of October, 2020, at __Braxton__, Mississippi.

_____
Jennifer Booth

## DECLARATION UNDER PENALTY OF PERJURY

I, Matthew Booth, a citizen of the United States and a resident of the State of Mississippi, declare under penalty of perjury under 28 U.S.C. § 1746 that the above I true and correct to the best of my knowledge.

Executed this  30  day of October, 2020, at Braxton , Mississippi.

_____
Matthew Booth