IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **L.B.**, by and through her parents and guardians, Michael Booth and Jennifer Booth,<br><br>     *Plaintiff,*<br><br>  v.<br><br>**SIMPSON COUNTY SCHOOL DISTRICT**; the **BOARD OF EDUCATION OF SIMPSON COUNTY, MISSISSIPPI**; **GREG PAES**, Superintendent of the Simpson County School District, in his official and individual capacities; **ROBERT SANDERS**, Assistant Superintendent of the Simpson County School District, in his official and individual capacities; and **ANTOINETTE WOODALL**, Principal of Simpson Central School, in her official and individual capacities,<br><br>     *Defendants.* | Civil Case No. 3:20-cv-704-HTW-LRA |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... iii

Introduction ................................................................................................. 1

Legal Standard ............................................................................................ 3

Argument ..................................................................................................... 4

    I.  L.B. has a substantial likelihood of succeeding on the merits of her First
Amendment claims. ................................................................................. 4

        A.    The Religious Speech Policy violates L.B.'s right to free speech
because it expressly discriminates against religious views and content. ...... 4

        B.    The Religious Speech Policy violates L.B.'s right to free exercise of
religion because it imposes special disabilities on religious speech............. 10

II. L.B. satisfies the remaining preliminary injunction factors. ....................... 12

        A.    Prohibiting L.B.'s desired expression is a quintessential irreparable
harm............................................................................................... 12

        B.    L.B.'s injury far outweighs any interest in enforcing an
unconstitutional law. ........................................................................ 12

        C.    Protecting First Amendment freedoms is always in the public
interest............................................................................................ 13

Conclusion ................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Bethel School District No. 403 v. Fraser,*
    478 U.S. 675 (1986) ................................................................ 4

*Blackwell v. Issaquena County Board of Education,*
    363 F.2d 749 (5th Cir. 1966) .................................................. 9

*Brown v. Entertainment Merchants Association,*
    564 U.S. 786 (2011) ................................................................ 9

*Burnside v. Byars,*
    363 F.2d 744 (5th Cir. 1966) ................................................ 10

*Campaign for Southern Equality v. Bryant,*
    64 F. Supp. 3d 906 (S.D. Miss. 2014) .................................. 13

*Canady v. Bossier Parish School Board,*
    240 F.3d 437 (5th Cir. 2001) .................................................. 5

*Capital Square Review & Advisory Board v. Pinette,*
    515 U.S. 753 (1995) .......................................................... 4, 11

*Christian Legal Society v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ................................................ 13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ................................................ 2, 10, 11, 12

*Deerfield Medical Center v. City of Deerfield Beach,*
    661 F.2d 328 (5th Cir. 1981) ............................................ 3, 13

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................ 3

*Good News Club v. Milford Central School,*
    533 U.S. 98 (2001) .................................................................. 7

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ........................................................ 2, 6

*Ingebretsen on Behalf of Ingebretsen v. Jackson Public School District,*
    88 F.3d 274 (5th Cir. 1996) .............................................. 12, 13

*Janvey v. Alguire,*
    647 F.3d 585 (5th Cir. 2011) .................................................. 3

*Jones v. Caruso,*
    569 F.3d 258 (6th Cir. 2009) .................................................. 3

*Jones v. Texas Department of Criminal Justice,*
    880 F.3d 756 (5th Cir. 2018) .................................................. 3

*Lamb's Chapel v. Center Moriches Union Free School District,*
   508 U.S. 384 (1993) ........................................................................................ 6

*Lionhart v. Foster,*
   100 F. Supp. 2d 383 (E.D. La. 1999) ........................................................... 3, 13

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
   138 S. Ct. 1719 (2018) ..................................................................................... 10

*Maxwell v. School District of Volusia County,*
   No. 6:20-cv-1954, 2020 WL 6438688 (Oct. 23, 2010) ................................. 8

*McCullen v. Coakley,*
   573 U.S. 464 (2014) ......................................................................................... 8

*McDaniel v. Paty,*
   435 U.S. 618 (1978) ......................................................................................... 12

*Morgan v. Swanson,*
   659 F.3d 359 (5th Cir. 2011) ..................................................................... 2, 6, 7

*Opulent Life Church v. City of Holly Springs,*
   697 F.3d 279 (5th Cir. 2012) .................................................................. 3, 12, 13

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ................................................................................ 5, 7, 8, 9

*Rosenberger v. Rectors & Visitors of University of Virginia,*
   515 U.S. 819 (1995) ............................................................................... 2, 4, 6, 7

*Saxe v. State College Area School District,*
   240 F.3d 200 (3d Cir. 2001) ............................................................................ 6

*Tinker v. Des Moines Independent Community School District,*
   393 U.S. 503 (1969) ................................................................................. passim

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   137 S. Ct. 2012 (2017) ....................................................................... 2, 10, 11

## INTRODUCTION

The Simpson County School District has prohibited a third-grade student from wearing a mask that says "Jesus Loves Me" because it is religious. The First Amendment flatly prohibits schools from censoring speech for its religious views. But unless this Court intervenes, L.B. will be forced to comply with the District's unconstitutional commands or face disciplinary action.

The material facts are straightforward. L.B. is a third-grader at Simpson Central School in the District. ECF No. 1, Compl. ¶ 15. The District requires masks to be worn by students in all common spaces of the school. *Id.* ¶ 54. In compliance with the District's mandate, L.B. desires to wear her "Jesus Loves Me" mask while she attends school. *Id.* ¶¶ 17–18. Before October 13, she wore the mask to school on several occasions without incident. *Id.* ¶ 75.

The District allows other students and faculty to wear masks with expressive logos and messages like "Black Lives Matter." *Id.* ¶¶ 68–71. L.B.'s mask never caused any disruption or distraction and no student objected to its message. *Id.* ¶¶ 84–87. But the District has prohibited L.B. from wearing her mask since October 13. *Id.* ¶¶ 79–87.

Defendants initially justified their actions by stating that students could not wear masks with words (although it allowed other students to do so) and then by stating that it violated the school's ban on obscene clothing. *Id.* ¶¶ 74, 90–92. In the end, the District changed its Restart Plan and sent a letter to all students and parents implementing the Religious Speech Policy, which prohibits masks containing "political, religious, sexual or inappropriate symbols, gestures or statements that may be offensive, disruptive or deemed distractive to the school environment." Compl. ¶¶ 105, 118, 119; ECF No. 1-3, Compl. Ex. 3 (Restart Plan); ECF No. 1-10, Compl. Ex. 10 (Letter from Superintendent to all students in the District). The District represented to L.B.'s mother that they censored L.B. because of the Religious Speech

Policy. Compl. ¶¶ 104–111. But the District did not implement the Policy until after it punished L.B. *Id.* ¶¶ 111–17. And curiously, the District has removed the links to its Restart Plan since L.B. filed this lawsuit.[1]

The District's ban on all speech deemed "religious" or "offensive" violates L.B.'s free-speech rights. Under well-settled First Amendment law, the government cannot engage in content-based or viewpoint-based discrimination, which is an "egregious form of content discrimination." *Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). By expressly targeting "religious" or "offensive" speech, Defendants do exactly that. *See id.* at 831 (banning religious expression "discriminate[s] against an entire class of viewpoints"); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (banning viewpoints one finds "offensive" is the "essence of viewpoint discrimination"). Just because L.B. is an elementary school student does not diminish these rights. "[T]he First Amendment protects all students from viewpoint discrimination against private, non-disruptive, student-to-student speech." *Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011) (en banc).

In addition, expressly targeting L.B. based on her religious speech violates the Free Exercise Clause because it imposes "special disabilities" on her based on her religious views or beliefs. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017). It censors *all* religious speech but allows most secular speech without justification. This specifically targets L.B. and her religious practices. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993).[2] Indeed, the Policy puts "religious" expression on the same level as "sexual or inappropriate symbols, gestures or statements."

---

[1] The link was originally accessible by searching the District's webpage, https://www.simpson.k12.ms.us/?showHomepage=true.

[2] L.B. relies on her viewpoint- and content-based discrimination and free exercise claims and does not in this motion argue her other free speech or vagueness claim.

2

The District's blatant violations of the First Amendment deprives L.B. of her rights each school day and should be remedied immediately. For these reasons and those below, this Court should preliminarily enjoin Defendants from enforcing their Religious Speech Policy against L.B. or any other student or teacher in the District.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Jones v. Texas Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018). To show a substantial likelihood of success on the facts, the "plaintiff must present a prima facie case but need not show that [she] is certain to win." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011).

When assessing these requirements, "the 'likelihood of success' prong is the most important to [the court's] analysis and often determinative in First Amendment cases." *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("Because of the nature of the constitutional analysis involved in evaluating plaintiffs' likelihood of success on the merits, we have already been required to conclude that the justifications offered for defendants' actions do not outweigh the harm to plaintiffs . . . ."). That is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "In contrast, the state has no interest in enforcing an unconstitutional [law]." *Lionhart v. Foster*, 100 F. Supp. 2d 383, 392 (E.D. La. 1999). In the same vein, "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). Here, Plaintiff satisfies each preliminary-injunction factor.

ARGUMENT

**I.   L.B. has a substantial likelihood of succeeding on the merits of her First Amendment claims.**

The District and Board approved an unconstitutional Religious Speech Policy that unconstitutionally discriminates against L.B. based on her religious views and the religious content of her mask. And because Defendants have singled out L.B. for her religious speech, they have also run afoul of the Free Exercise Clause.

> **A.   The Religious Speech Policy violates L.B.'s right to free speech because it expressly discriminates against religious views and content.**

As the private expression of L.B.'s religious views, her "Jesus Loves Me" mask is a quintessential form of First-Amendment protected speech. Defendants singled out her mask for its religious content and then banned all religious expression on masks, while allowing students to express all manner of other secular viewpoints. This "discriminate[s] against an entire class of [religious] viewpoints" and is therefore subject to strict scrutiny. *Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995). Defendants cannot meet that high standard.

> **1.   L.B.'s "Jesus Loves Me" mask is protected speech.**

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). This is because American public schools prepare students to be citizens. Schools must promote the free exchange of ideas, not "foster a homogenous people." *Id.* at 511. This, of course, includes "tolerance of divergent political and religious views, even when the views expressed may be unpopular." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986). And students' "private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capital Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995).

4

To be sure, a school can limit expression if the speaker will cause "material and substantial interference with schoolwork or discipline." *Tinker*, 393 U.S. at 511. But a school must have more than an "undifferentiated fear or apprehension of disturbance" or the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 508.

Here, L.B. desires to wear a mask like the armbands in *Tinker*. L.B.'s mask is "a silent, passive expression of opinion, unaccompanied by any disorder or disturbance on the part of petitioners." 393 U.S. at 508. L.B. has worn her mask to school many times and it never caused a disturbance. The school cannot show a disruption of any kind, let alone a material and substantial one.

In fact, L.B.'s mask is entitled to even more protection. The armbands in *Tinker* were symbolic expression "closely akin to 'pure speech.'" 393 U.S. at 505. But L.B.'s mask is itself pure speech, "which, we have repeatedly held, is entitled to comprehensive protection under the First Amendment." *Id.* at 506; *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001) ("Words printed on clothing qualify as pure speech and are protected under the First Amendment.").

### 2. Excluding religious expression on masks censors L.B.'s speech because of her religious views and the mask's religious content.

A public school "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (striking ordinance that discriminated against signs that were "ideological," "political," or pertained to a religious event). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious

form of content discrimination." *Rosenberger*, 515 U.S. at 829. This applies to students of all ages in public schools. *Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011) (en banc) ("[W]e hold that the First Amendment protects all students from viewpoint discrimination against private, non-disruptive, student-to-student speech.").

Here, the Religious Speech Policy discriminates against L.B. because of her religious viewpoint. Excluding masks that express anything deemed "religious" "discriminate[s] against an entire class of viewpoints." *Rosenberger*, 515 U.S. at 831. This is well-established, as the Supreme Court has directly rejected the idea that excluding "religious" speech is anything but viewpoint discrimination:

> The dissent's assertion that no viewpoint discrimination occurs because the Guidelines discriminate against an entire class of viewpoints [specifically, "religious expression"] reflects an insupportable assumption that all debate is bipolar and that antireligious speech is the only response to religious speech. . . . If the topic of debate is, for example, racism, then exclusion of several views on that problem is just as offensive to the First Amendment as exclusion of only one.

*Id.* at 831; *see also Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 384–85 (1993) ("[I]t discriminates on the basis of viewpoint by permitting school property to be used for the presentation of all views about family issues and child rearing except those dealing with the subject from a religious standpoint.").

Similarly, banning expression that "may be offensive" is a quintessential form of viewpoint discrimination and "violate[s] the bedrock First Amendment principle that the government cannot discriminate against ideas that offend." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (cleaned up); *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) (Alito, J.) ("The Supreme Court has held time and again, both within and outside of the school context, that the mere fact that someone might take offense at the content of speech is not sufficient justification for prohibiting it.") (citing *Tinker*, 393 U.S. at 509).

What's more, there is nothing innately offensive or disruptive about religious speech or about self-directed and innocuous speech like "Jesus Loves Me." After all, even directly proselytizing by giving "Jesus Loves Me" pencils to other students at an elementary school is protected by the First Amendment. *Morgan*, 659 F.3d at 397; *see also id.* at 412 n.28 ("[R]egardless of whether the speech is 'aimed principally at proselytizing or inculcating belief in a religious faith,' *Rosenberger*'s ban on viewpoint discrimination applies with equal force.") (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 126 (2001) (Scalia, J., concurring)).

The same flaws that render this discrimination viewpoint-based also make it unlawful content-based discrimination. *Rosenberger*, 515 U.S. at 829. And this makes sense. If L.B.'s mask had said "Mommy Loves Me," there is little doubt that the District would allow L.B. to wear it. That is, because Defendants targeted L.B.'s mask for its religious content, "it can only be inferred that [L.B.] would have been allowed to [wear her mask] if [it] had born a secular message. *Tinker*, when it applies, cannot countenance such a restriction on private speech." *Morgan*, 659 F.3d at 388.

### 3. Defendants cannot justify their discriminatory treatment of L.B.'s religious views under strict scrutiny.

Defendants may only satisfy strict scrutiny by showing that their Religious Speech Policy "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. But they cannot satisfy this exceedingly difficult standard because the District is silencing an entire set of viewpoints based on a purely hypothetical concern about disruption.

While the "material and substantial interference with schoolwork or discipline" may be a compelling interest, a school cannot prohibit speech simply because of "undifferentiated fear or apprehension of disturbance" or the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 508–9. Rather, to be narrowly tailored, the regulation "must be

the least restrictive means" of achieving the government's asserted interest. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

For example, a Florida court recently enjoined a public school from prohibiting a student from driving onto campus with a large "Trump" elephant statue in the back of his truck. *Maxwell v. Sch. Dist. of Volusia Cty.*, No. 6:20-cv-1954, 2020 WL 6438688, at *1 (Oct. 23, 2010). The court noted that, even if it may "seem to some obnoxious and controversial," the school allowed other types of political expression on campus and there was no evidence of anything more than an "'undifferentiated fear or apprehension of disturbance.'" *Id.* at *3 (quoting *Tinker*, 393 U.S. at 508).

It is equally true that a policy "cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 576 U.S. at 172. A policy that is underinclusive as to the District's asserted harm "fails strict scrutiny." *Id.* at 172. Defendants justify their Policy by stating that political and religious speech "may be offensive, disruptive or deemed distractive to the school environment." ECF No. 1-10, Compl. Ex. 10; ECF No. 1-3, Compl. Ex. 3. But the Policy is radically underinclusive because it allows students to express a wide variety of secular messages on masks, and all manner of messages on other articles of clothing. The Policy does not rationally effectuate any school interest, let alone a compelling one.

Many other types of speech can be disruptive, not just "political, religious, sexual or inappropriate symbols, gestures or statements." ECF No. 1-3, Compl. Ex. 3; ECF No. 1-10, Compl. Ex. 10. And in practice, the District has allowed "Black Lives Matter" masks, which are undoubtedly political and may even be disruptive. Compl. ¶¶ 70, 140. Defendants cannot "show that limiting [religious or political speech] is necessary to eliminate threats to [school order], but that limiting other types of

8

[speech] is not." *Reed*, 576 U.S. at 172. This "leaves appreciable damage to that supposedly vital interest unprohibited." *Id.* at 172.

Similarly, if Defendants were concerned about religious and political speech being problematic, there is no reason they should not also prohibit such speech on other types of clothing. But Defendants emphatically stated that the Policy "is **specific to masks only**." ECF No. 1-10, Compl. Ex. 10. This "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011). The fact that Defendants enacted the Religious Speech Policy only after giving L.B. two conflicting explanations for banning her speech and only after her mother wrote to the school to question their decision—and that they did so surreptitiously—only underscores these doubts. Compl. ¶¶ 103–17; footnote 1, *supra*.

L.B.'s case proves this point. Like the armbands in *Tinker*, L.B.'s mask is "a silent, passive expression of opinion, unaccompanied by any disorder or disturbance." 393 U.S. at 508. "There is here no evidence whatever of [L.B.'s] interference, actual or nascent, with the school's work or of collision with the rights of other students to be secure and to be let alone." *Id.* The fact that L.B. wore her "Jesus Loves Me" mask to school multiple times without any incident amply demonstrates this. There was no disruption at all, let alone a material and substantial one.

The District's ban relies, at most, on an "undifferentiated fear or apprehension of disturbance" or the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 508. This is not a constitutional justification for censoring L.B.'s speech. *Compare Blackwell v. Issaquena Cty. Bd. of Educ.*, 363 F.2d 749, 751 n.2 (5th Cir. 1966) (affirming suspension of Mississippi students wearing "freedom buttons" where students were "accosting other students in the corridors and halls" and were placing the buttons on other students without

permission), *with Burnside v. Byars*, 363 F.2d 744, 748 (5th Cir. 1966) (reversing suspension of Mississippi students wearing "freedom buttons" where school evidence revealed "no interference with educational activity" or that "there was a commotion" or distraction from classes).

Defendants' Policy fails strict scrutiny in multiple ways and is therefore unconstitutional viewpoint-based and content-based discrimination.

### B. The Religious Speech Policy violates L.B.'s right to free exercise of religion because it imposes special disabilities on religious speech.

L.B. cannot share her religious beliefs by wearing her "Jesus Loves Me" mask because Defendants have expressly prohibited all religious expression on masks. This targets L.B. for her religious beliefs and thus violates the First Amendment's Free Exercise Clause under well-established Supreme Court precedent.

The Free Exercise Clause "'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny" laws that disfavor religion. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993)). It "bars even 'subtle departures from neutrality' on matters of religion" and requires careful scrutiny "upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (quoting *Lukumi*, 508 U.S. at 534, 547). Thus, the government may not expressly impose "special disabilities on the basis of religious views or religious status," *Trinity Lutheran*, 137 S. Ct. at 2021, or covertly attempt a "religious gerrymander" by exempting secular, but not religious, conduct from regulation. *Lukumi*, 508 U.S. at 535, 537, 542.  Such restrictions are subject to strict scrutiny unless they are both "neutral" and "generally applicable." *Trinity Lutheran*, 137 S. Ct. at 2021.

### 1. Defendants expressly impose disabilities on L.B. based on her religious views.

Defendants' Religious Speech Policy is the exact opposite of neutral and generally applicable. Defendants are expressly prohibiting masks with *religious* expression. L.B. desires to engage in religious exercise by expressing a religious message on her mask. This expression "receives preferential treatment under the Free Exercise Clause." *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 767 (1995). Instead of treating L.B.'s religious expression fairly, the Policy "casts piety in with pornography," while still allowing masks with other types of expression or symbols on them. *Id.* This categorical ban prohibits L.B. from exercising her religious beliefs by peacefully and respectfully sharing them with others.

By prohibiting L.B.'s religious exercise, Defendants have imposed "special disabilities" on L.B.—and many other religious students—simply because of her religious views or beliefs. *Trinity Lutheran*, 137 S. Ct. at 2021. Religious persons are not allowed to speak from their religious perspectives or utter viewpoints considered religious by the school. Put another way, religious persons like L.B. must self-censor in ways that non-religious persons do not. Such conduct is "odious to our Constitution . . . and cannot stand." *Id.* at 2025.

### 2. Defendants impermissibly exempt secular but not religious speech from the Religious Speech Policy.

By exempting secular, but not religious, speech from the Religious Speech Policy, Defendants have created an impermissible "religious gerrymander" that disproportionately affects religious conduct. Just as slaughterhouses, hunting, and euthanasia presented substantially the same health risks as the prohibited animal sacrifices in *Lukumi*, 508 U.S. at 543–45, large swaths of secular speech present the same or greater risk of disruption than religious speech. "The underinclusion is substantial, not inconsequential" and thus subjects the Policy to strict scrutiny. *Id.* at 543.

11

### 3. Defendants' Religious Speech Policy cannot survive strict scrutiny.

To survive, Defendants' Policy prohibition on religious expression must satisfy strict scrutiny. Laws subject to strict scrutiny are presumptively unconstitutional and can survive only if they "advance 'interests of the highest order' and [are] narrowly tailored in pursuit of those interests." *Id.* at 546. (quoting *McDaniel v. Paty*, 435 U.S. 618, 628 (1978)). "A law that targets religious conduct … will survive strict scrutiny only in rare cases." *Id.* For the same reasons as those in Section I.A.3 above, the Religious Speech Policy cannot withstand strict scrutiny under L.B.'s Free Exercise claim.

## II.  L.B. satisfies the remaining preliminary injunction factors.

### A.  Prohibiting L.B.'s desired expression is a quintessential irreparable harm.

L.B. easily demonstrates a "substantial threat that [s]he will suffer irreparable injury if the injunction is not issued." *Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996). Every day that L.B. is denied the ability to speak and engage in religious exercise, her First Amendment rights are violated. Under well-settled law, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This principle applies equally to L.B.'s free-speech, *id.*, and free-exercise rights. *Opulent Life Church*, 697 F.3d at 295.

Here, Defendants have enforced the Religious Speech Policy against L.B. multiple times, Compl. ¶¶ 79–80 & 105, 118, 119, so the Policy's continued existence creates a certain threat, not just a substantial one, that causes L.B. to suffer First Amendment, and thus irreparable, harm.

### B. L.B.'s injury far outweighs any interest in enforcing an unconstitutional law.

Obtaining a preliminary injunction also requires the plaintiff to show that "the threatened injury outweighs any harm [an] injunction might cause to the defendant."

12

*Opulent Life Church*, 697 F.3d at 288. And where, as here, there is irreparable harm, a party opposing injunctive relief "would need to present powerful evidence of harm to its interests" to prevent the scales from weighing in the movant's favor. *Id.* at 297.

Here, L.B.'s harm is quintessentially irreparable because the District prevents L.B. from exercising her First Amendment rights. But Defendants suffer no harm if they are prohibited from breaking the law. They have no legitimate interest in enforcing an unconstitutional policy, so the balance of harms tips in L.B.'s favor. *See Campaign for S. Equality v. Bryant*, 64 F. Supp. 3d 906, 951 (S.D. Miss. 2014) ("The State absolutely has an interest in enforcing the law. That is undeniable. But that interest yields when the law at issue violates the constitution."); *Lionhart*, 100 F. Supp. 2d at 392 ("[T]he state has no interest in enforcing an unconstitutional [law].").

## C. Protecting First Amendment freedoms is always in the public interest.

Finally, the plaintiff must show that "the injunction will not disserve the public interest." *Opulent Life Church*, 697 F.3d at 288. Meeting this factor is simple: "Injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Nor does "any public interest in allowing [legitimate governmental activities] . . . extend so far as to allow arbitrary and capricious actions that interfere with the exercise of fundamental rights." *Deerfield Med. Ctr.*, 661 F.2d at 338–39. Accordingly, "the public interest [will] not [be] disserved by an injunction preventing [the] implementation" of an unconstitutional policy. *Ingebretsen*, 88 F.3d at 280.

## CONCLUSION

For these reasons, Plaintiff respectfully asks this Court to grant the requested preliminary injunction.

Respectfully submitted this 10th day of November, 2020.

*s/ Tyson C. Langhofer*

Tyson C. Langhofer*
KS Bar No. 19241
Michael R. Ross**
TN Bar No. 035304
ALLIANCE DEFENDING FREEDOM
20116 Ashbrook Pl., Ste. 250
Ashburn, VA 20147
Telephone:  (571) 707-4655
Facsimile:  (571) 707-4656
tlanghofer@ADFlegal.org
mross@ADFlegal.org

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile: (700) 339-6744
dcortman@ADFlegal.org

P. Sharkey Burke, Jr.
MS Bar No. 10436
ANDERSON CRAWLEY & BURKE, PLLC
216 Draperton Court
Ridgeland, MS 39157
Telephone:  (601) 707-8795
Facsimile:  (601) 707-8801
sburke@acblaw.com

*Attorneys for Plaintiff*

*\*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice application pending*