**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**L.B., a minor by and through her parents**                    **PLAINTIFFS**
**and natural guardians, MATTHEW BOOTH**
**and JENNIFER BOOTH**

    **vs.**                                    **CIVIL ACTION No.: 3:20-CV-704-HTW-LGI**

**SIMPSON COUNTY SCHOOL DISTRICT;**
**THE BOARD OF EDUCATION OF SIMPSON**
**COUNTY, MISSISSIPPI; GREG PAES,**
**Superintendent of the Simpson County School**
**District, in his individual and official capacities;**
**ROBERT SANDERS Assistant Superintendent**
**of the Simpson County School District, in his**
**individual and official capacities; ANTOINETTE**
**WOODALL, Principal of Simpson Central School,**
**in her individual and official capacities**                    **DEFENDANTS**

## <u>ORDER</u>

Plaintiff L.B. ("Plaintiff" or "L.B.") is an elementary school student at Simpson Central

School ("CSC"), who alleges that her constitutional rights were violated when the defendants

herein prohibited her from displaying the message "Jesus Loves Me" on a face mask at school.

The Defendants assert that the prohibition resulted from the Simpson County School District's (the

"District") policy against the exhibition of "political, religious, or sexual references."

On November 2, 2020, Plaintiff filed the subject lawsuit through her parents and natural

guardians, Matthew and Jennifer Booth (the "Booths") against the following defendants: the

Simpson County School District; the Board of Education of Simpson County, Mississippi; Greg

Paes (Superintendent of the District); Robert Sanders (Assistant Superintendent of the District);

and Antoinette Woodall (Principal of Simpson Central School) (collectively, "the Defendants").

The parties, thereafter, commenced settlement negotiations, whereby each side expressed its desire

to settle this matter without proceeding to trial.

1

Before this court now is the Defendants' *Joint[1] Motion to Enforce Settlement* **[Docket no. 32]**. The Defendants, by way of their Motion, allege that, on January 28, 2021, the parties herein reached a settlement agreement resolving all of Plaintiff's claims *sub judice*, which agreement was later memorialized in writing. Plaintiff, however, argues that the Defendants changed two (2) material terms on the final written version of the settlement agreement. Due to these alleged changes, Plaintiff has refused to sign and acknowledge the Defendants' proposed written settlement.

According to Defendants, the January 28, 2021, settlement agreement is enforceable, and they now seek this court's intervention to enforce the terms of the alleged settlement. Having reviewed thoroughly all submissions from the parties and the relevant jurisprudence, this court finds as follows.

## I.  JURISDICTION

Federal courts are courts of limited jurisdiction. The parties have not challenged whether this court possesses subject matter jurisdiction. This court, nevertheless, has an independent obligation to verify it indeed possesses subject matter jurisdiction.

Federal civil subject matter jurisdiction principally arises under Title 28 U.S.C. § 1332[2] and § 1331[3]. The former is commonly referred to as diversity jurisdiction, while the latter

---

[1] Defendants' title of "Joint" refers only to all the defendants, not both Plaintiff and Defendants.

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
28 U.S.C.A. § 1332 (West)

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

is hailed as federal question jurisdiction. Plaintiff filed her lawsuit in this federal forum, alleging the Defendants had violated a federal enactment: Title 42 U.S.C. § 1983[4] by infringing upon Plaintiff's constitutional rights under the First[5] and Fourteenth[6] Amendments to the United States Constitution. Accordingly, because of the presence of this federal enactment, this court finds that it possesses federal question subject matter jurisdiction under Title 28 U.S.C. § 1331.

## II.     THE LAWSUIT

Plaintiff's Complaint [Docket no. 1] alleges that on October 13, 2020, L.B., then a third grader at SCS, went to school wearing her "Jesus Loves Me" mask. Her mask was in obedience to the school's requirement for its students to wear face masks for protection against the Covid-19 virus.

---

28 U.S.C.A. § 1331 (West)

[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

[5] Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I

[6] Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV

Defendants allegedly asked L.B. to remove the mask. Plaintiff asserts that Defendant Woodall, L.B.'s principal, explained to L.B.'s mother and legal guardian, Mrs. Booth, that this mask violated the school's ban on "obscene language or gestures" and "clothing of any suggestive nature." Later, says Plaintiff, Defendant Robert Sanders, the District's assistant superintendent, emailed Mrs. Booth, explaining that the District specifically prohibited masks with "political, religious, or sexual references."("Masks will be required to be worn by all students and all personnel in all common spaces. No political, religious, sexual or inappropriate statements are allowed on masks") (hereinafter referred to as the "Religious Speech Policy"). [Docket no. 1, p. 3].

On November 2, 2020, the Booths filed Plaintiff's Verified Complaint [Docket no. 1] against the five defendants, listed *supra*. Plaintiff's Complaint asked this court to "declar[e] Defendants' Religious Speech Policy prohibiting "political," "religious," "inappropriate," or "offensive" messages as unconstitutional, facially and as-applied to L.B.'s religious speech." Plaintiff, further, sought a preliminary and permanent injunction forbidding the Defendants from enforcing the Religious Speech Policy. Plaintiff asked this court to award nominal damages, as well as reasonable costs and expenses of her lawsuit, including attorneys' fees.

On November 25, 2020, the Defendants filed their Answer and Defenses to Plaintiff's Complaint [Docket no. 21]. Defendants' Answer addressed each allegation of Plaintiff's Complaint, paragraph by paragraph, denying any liability toward the Plaintiff. Defendants also asserted affirmative defenses and "reseve[d]" the right to present other and further defenses revealed after further discovery and investigation herein." [Docket no. 21, p. 18]. Defendants did not allege any counterclaims against Plaintiff.

### III.    SETTLEMENT NEGTIATIONS

Plaintiff alleges that on the same day the Defendants filed their Answer, the parties also agreed on principal terms that "would have concluded this lawsuit". [Docket no. 35, p. 6]. Plaintiff contends, however, that on December 2, 2020, Defendants' counsel sent a draft settlement agreement that included a confidentiality provision requiring "L.B., her family, and her counsel to remove all references to this dispute from their social media accounts and websites and not to speak about any of it going forward". According to Plaintiff, at that point, settlement discussions broke down, and the litigation continued.

On January 25, 2021, Plaintiff's attorney, Tyson Langhofer ("Attorney Langhofer"), employed by the Alliance Defending Freedom ("ADF"), sent the following email correspondence to defense counsel Christy Malatesta ("Attorney Malatesta"):

> Christy,
>
> After our call last week, we spoke with our clients. The Booths are willing to make one final offer to settle the case prior to the court ordered mediation. The Booths will agree to dismiss the lawsuit with prejudice in exchange for the following:
>
> 1.  The school will send a letter to all parents and staff retracting the ban on masks with "political" or "religious" expression which was contained in both the Restart Plan and in the October 24 letter from Superintendent Paes.
>
> (The December 10 letter does not retract the former policy but merely requires masks  to conform with the school's dress code. The District, to our client's knowledge, has never made a single announcement or made it clear to parents, students, and staff that the ban on political and religious messages has been repealed.)
>
> 2.  The school agrees to allow [L.B.] to wear her "Jesus Loves Me" mask.
>
> 3.  The District will pay $5,000 in attorney's fees.
>
> The parties previously have reached agreement on the first two points. And the third represents a discount from the amount of fees ($7,500) to which the

parties previously agreed. As we have indicated, we will not agree to any sort of confidentiality clause. If we are unable to reach a settlement prior to the mediation, we will be seeking the full amount of our fees (currently over $40,000) and will continue to pursue damages and permanent injunctive relief to fully vindicate and secure our clients' rights.

Tyson

[Email Correspondence dated 01/25/2021, Docket no. 32-1]. The above constitutes the entirety of

Attorney Langhofer's message.

On January 28, 2021, Attorney Malatesta responded to the above message by agreeing to

Attorney Lanhofer's  proposed terms. Her email reflected, however,  that the parties would have

to seek Chancery Court approval of the settlement, as this matter involves a minor. Attorney

Malatesta further requested confirmation that the Booths were willing to testify in Chancery Court.

The following reflects said correspondence in its entirety:

Tyson:

My client agrees to the settlement. I will work on all of the paperwork since, even though my understanding is that all of the money is to go to attorney's fees, we are going to have to get this approved by the local Chancery Court as it involves a minor. Additionally, the Booths are going to have to be willing to represent to the Chancery Court via testimony that there were no monetary damages and that they do not mind that you will get a 100% of the financial portion of the settlement. Please make sure they are agreeable to providing that testimony.

Once you confirm, I will notify the magistrate judge that we have a settlement in principle and that we will submit an Agreed Judgment once the monetary disbursement has been approved by the local Chancery Court. Thanks.
Christy

[Email Correspondence dated 1/28/2021, Docket no. 32-2].  Defendants claim that, per

Mississippi case law, as of January 28, 2021, the parties had reached an enforceable settlement.

On the next day, January 29, 2021, Attorney Langhofer sent the following correspondence, agreeing that the Booths would appear at a Chancery Court hearing to approve the minor's settlement with the Defendants.

> Christy,
>
> Our client has approved the settlement terms, including the $5,000 in attorney's fees, and is happy to appear before a Chancery Court judge.
>
> We will agree to the terms as they are laid out in the settlement agreement. Please have you and your clients sign this agreement. We can inform the magistrate after the agreement is signed. We are fine with you handling any other necessary paperwork with the Chancery Court. Thank you.

[Email correspondence dated 1/29/2021, Docket no. 32-3].

Attached to the correspondence was a proposed "Settlement Agreement and Release" ("Proposed Agreement") prepared by a second ADF attorney representing the Plaintiff, Michael Ross ("Attorney Ross"). The Proposed Agreement [Docket no. 32-4], contained the following relevant language:

> C. The Parties to this Agreement wish to resolve all claims Plaintiff has or could allege against Defendants related to these events. The parties also acknowledge that this Agreement will be approved by a state Chancery Court before the terms in Section 1 below are executed.
>
> 3. Release. In consideration of Defendants' actions specified in Paragraph 1, Plaintiff also hereby fully releases, acquits, and forever discharges Defendants, their agents, assigns, and employees, from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Plaintiff may now have, has ever had, or hereafter may have (i) relating directly or indirectly to the allegations in Paragraph A of this Agreement, and (ii) which arise from actions taken by Defendants prior to the date of this Agreement. This release and waiver covers all claims and demands for relief, damages, costs, expenses, and causes of action of any kind or character (whether known or unknown or foreseeable or unforeseeable) under federal and state law, as of the date of this Agreement.
>
> 4. Entire Agreement. This Agreement contains the entire understanding of the parties and supersedes all previous oral and written agreements; there are other

agreements, representation, or understanding not set forth herein. Plaintiff acknowledges that neither Defendants, nor any of their agents, representatives, employees, or attorneys, have made any representations to them concerning the terms or effects of this Agreement other than those contained in it. Further, this Agreement can be modified only by a written agreement by the Parties.

[ See Docket no. 32-4, Proposed Agreement as of January 29, 2021].

On Friday 18, 2021, Attorney Malatesta sent an email to Attorney Ross, which stated, among other things, that "...[a]s for the [D]efendants, they are not releasing any claims, since obviously they did not assert any, and so they can only sign as to form." [Docket no. 32-5]. Attached to this email was a document containing proposed edits to Attorney Ross's Proposed Agreement. According to the Plaintiff, the following additional language forms the basis of her dissent to the existence of an enforceable agreement:

> 3. Release. In consideration of Defendants' actions specified in Paragraph 1, Plaintiff also hereby fully releases, acquits, and forever discharges Defendants, their agents, assigns and employees, from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Plaintiff may now have, has ever had, or hereafter may have (i) relating directly or indirectly to the allegations in Paragraph A of this Agreement, and (ii) which arise from actions taken by Defendants prior to the date of this Agreement. This release and waiver covers all claims and demands for relief, damages, costs, expenses, and causes of action of any kind or character (whether known or unknown or foreseeable or unforeseeable) under federal and state law, as of the date of this Agreement ***"asserted by plaintiffs only, including [L.B], against all Defendants in this Litigation"***.

On February 22, 2021, Plaintiff's counsel rejected Defendants' proposed changes and offered another revised version. [Docket no. 32-6]. Plaintiff's counsel also explained why Defendants' two changes were objectionable. Plaintiff objected to "adding 'as to Form Only' after Defendants because Defendants are not signing the Agreement as to form only. They (Defendants) are, [rather], agreeing to take the action set forth in the Agreement." [Docket no. 32-7]. Plaintiff insisted on a mutual release because she proposed "the settlement offer with the understanding that

it would resolve all claims by either party related to the underlying facts" and was "not willing to sign a settlement agreement unless Defendants also agreed to release any and all claims against Plaintiff." [Docket no. 32-7]. Plaintiff's counsel added that "…even though Defendants have not yet alleged any counterclaims against Plaintiff, res judicata and collateral estopped would prevent Defendants from bringing any such claims if we proceed to judgment. Plaintiff's counsel emphasized that "[i]f we are going to reach a resolution, our clients must have assurance that all claims are resolved." [Docket no. 32-7].

On March 3, 2021, Defendants filed their Joint Motion to Enforce Settlement [Docket no. 32], asking this court to "enter an Order enforcing the settlement of the claims of the [Plaintiff] and directing the [Plaintiff] to attend a Chancery Court hearing on approval of the settlement for L.B., to execute a release and to dismiss this action in accordance with the terms of the settlement agreement." On March 18, 2022, Plaintiff filed her Response in Opposition to the Defendants' Motion to Enforce Settlement. [Docket no. 36].  Defendants replied in a timely fashion on March 24, 2021. [Docket no. 37].

On October 21, 2021, this court held a Motion Hearing on the Defendants' Joint Motion to Enforce Settlement. During the hearing, this court heard oral arguments from both sides. Plaintiff's attorney, Hon. Michael R. Ross, presented two new cases during his oral argument for this court's consideration: *Gulf Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721 (Miss. 2019); and *WRH Properties, Inc. v. Est. of Johnson*, 759 So. 2d 394 (Miss. 2000).

Upon completion of the Motion hearing, Attorney Malatesta requested a period of one (1) week to review the Plaintiff's new submissions and file a response brief. This court, noting that Plaintiff failed to include these newly-named authorities in her memorandum briefs, granted Defendants' request. This court now addresses the parties' arguments and presents its analysis.

# IV.   ANALYSIS

"[F]ederal courts possess the inherent power to enforce agreements entered into in settlement of litigation." *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014). As settlement agreements are contracts, federal courts rely on state law for "the construction and enforcement of settlement agreements." *Id*.   Accordingly, in conducting its legal analysis, this court applies Mississippi state law to the case *sub judice*.

Under Mississippi law, a settlement agreement exists only "if there was an actual meeting of the minds." *Howard v. TotalFina E & P USA, Inc.,* 899 So. 2d 882, 889 (Miss. 2005*Id*. The party trying to enforce the settlement must "prove by a preponderance of the evidence that there was a meeting of the minds." *Id*. This meeting of the minds "has to be expressed to where there is nothing of consequence left undone." *Id*. Thus, a preliminary "agreement to reach an agreement" is not an enforceable contract. *Intrepid, Inc. v. Bennett,* 176 So. 3d 775, 778 (Miss. 2015).

Here, Plaintiff asserts that no enforceable agreement exists between the parties because at least two items "of consequence" stood between the parties and a deal: (1) Defendants refused to sign the agreement except "as to form only" and thus refused to bind themselves to the terms of the agreement; and (2) they refused to release all claims against Plaintiff.

Further, argues Plaintiff, even if the January 28, 2021, proposal left "nothing of consequence undone", it would still not be enforceable because the parties were "operating under a mutual mistake of fact" because Plaintiff understood the release would be mutual while Defendants understood it to be unilateral. *White v. Cooke*, 4 So. 3d 330, 334 (Miss. 2009).

The Complaint in this action accuses multiple defendants: The Simpson County School District; The Board of Education of Simpson County, Mississippi; Greg Paes, Superintendent of the District, in his official and individual capacities; Robert Sanders, Assistant Superintendent of

the District in his official and individual capacities; and Antoinette Woodall, Principal of Simpson Central School, in her official and individual capacities. The Defendants did not assert any counterclaims. Further, this court has no evidence before it the parties ever discussed such; thus, in this court's eye, this lawsuit was one between an aggrieved plaintiff suing various defendants. Plaintiff's endeavor seeking a mutual release would bind defendants- all of them- from pursuing any claims in the future against Plaintiff – potential claims not identified to the court, nor made a subject of any correspondence.

In *White*, the Mississippi Supreme Court established that a contract may be set aside, however, where both parties at the time of the agreement were operating under a mutual mistake of fact. *White v. Cooke,* 4 So. 3d 330, 334 (Miss. 2009) (citing *Greer v. Higgins,* 338 So.2d 1233, 1236 (Miss.1976) (internal quotations omitted). Such mistake "may apply to the nature of the contract, the identity of the person with whom it is made, or the identity or existence of the subject matter...." *Greer,* 338 So.2d at 1236 (quoting 17 C.J.S. *Contracts* § 144 at 894). In any event, the mistake must relate to a past or present material fact to relieve a party(s) from liability. *Greer,* 338 So.2d at 1236 (quoting 17 C.J.S. *Contracts* § 894).

This court finds that a mutual mistake existed here. According to the record before this court, Plaintiff sought to clarify a "mutual release" after Defendants had agreed to the material terms of the Settlement Agreement, which, seemingly, appeared ambiguous on this point to the Defendants. Defense counsel inserted language providing that the settlement agreement foreclosed the Plaintiff's claims only, and not any would-be claims by the Defendants. Defendants must have thought that the settlement agreement was ambiguous on this point, otherwise, Defendants had no motive to add this clarifying sentence.

The United States Court of Appeals for the Fifth Circuit directs this court's finding that a settlement agreement, once entered into cannot be repudiated by either party and will be summarily enforced. *Cia Anton Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). This court now  determine if such enforcement is necessary.

Mississippi law directs that "[t]he object of a signature is to show mutuality or assent" to the terms of a contract. *Heritage Bldg. Prop., LLC v. Prime Income Asset Mgmt., Inc.*, 43 So. 3d 1138, 1143 (Miss. Ct. App. 2009). Absent some external evidence to the contrary, having the parties sign is usually "condition precedent to its becoming a binding contract." *Id*. Defendants herein refused to sign the agreement except "as to Form only." In this court's eye, this refusal creates an ambiguity as to whether the Defendants were consenting to carry out the terms of the Proposed Agreement.

The Mississippi Court of Appeals' holding in *Klein v. McIntyre*, 966 So. 2d 1252 (Miss. Ct. App. 2007) supports this court's conclusion.  The Court in *Klein* found that the language "Approved as to Form Only" indicated that the signing party did not "fully and completely agree and consent" to certain child custody modification terms. In *Klein*, two child-custody modification orders were issued and signed by a Chancery Court Judge.  The modification orders contained signature lines for each party's attorney. The attorneys signed the orders; however, Klein's attorney added the additional hand-written language: "Approved as to Form Only" to each of the orders. *Id* at 1254.

The Mississippi Court of Appeals refused to enforce the terms of the modification orders, holding, as to each modification order, that:

> [t]he order itself does not indicate Klein's full agreement. The order was signed by Klein's attorney but with a clear limitation, "Approved as to Form Only." If the order was signed without limitation, we would not hesitate to enforce it. However, such is not the case here.  We must consider the limitation imposed on the order. We hold that the lack of

> Klein's execution of the order and the limitation imposed by Klein's counsel indicates that Klein did not fully and completely agree and consent to the entry of the order.

*Id*. at 1256-57.

The January 29, 2021, Proposed Settlement Agreement and Release imposed three obligations on Defendants: (1) send a public letter retracting the October 15, 2020, letter banning religious messages on masks; (2) refrain from punishing L.B. for wearing her "Jesus Loves Me" mask at school; and (3) pay $5,000 to Plaintiff's attorneys. Plaintiff alleges that, by stipulating that the Defendants would sign "as to Form only", Defendants refused to "show mutuality or assent" to the three terms of the Proposed Agreement. *Heritage Bldg. Prop., LLC*, 43 So. 3d at 1143. Plaintiff's counsel expressed his concern that Defendants were not agreeing to the content of the Agreement by stating: "we object to adding 'as to Form Only' after Defendants because Defendants are not signing the Agreement as to form only. They are agreeing to take the action set forth in the Agreement.". [Docket no. 32-7].  This court finds that because the Defendants did not retract the language "as to Form again", this court cannot find the Defendants unequivocally agreed to be bound by the content, or terms, of the agreement.

Finally, this court looks at the role of the Chancery Court in "finalizing" the settlement agreement between the parties. Under well-established Mississippi law,

> Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and[/]or the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by a waiver, or omission or neglect or design of a guardian, or

13

of any other person, so far as within the power of the court to prevent or correct. ***All persons who deal with guardians or with courts in respect to the rights of infants are charged with the knowledge of the above principles, and act to the contrary thereof at their peril.***

*In re Wilhite*, 121 So. 3d 301, 305–06 (Miss. Ct. App. 2013) quoting *Carpenter v. Berry*, 58 So. 39 1158, 1163 (¶ 19)(citations omitted and emphasis added).

As evidenced by the correspondence between the parties, and in accordance with Mississippi law, the parties knew and acknowledged that the agreement must be "blessed" by a Chancery Court judge. Neither party can, therefore, rely on this final step as a barrier between the enforceability of the settlement agreement.  This court, nonetheless, finds that for the reasons stated *supra*, the Proposed Agreement is not enforceable.

## V.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' *Joint Motion to Enforce Settlement Agreement* **[Docket no. 32] hereby is DENIED.**

**The parties are directed to contact the Magistrate Judge to schedule a telephonic case management and status conference.**

**SO ORDERED this the 26th day of March, 2022.**

**/s/HENRY T. WINGATE                        **
**UNITED STATES DISTRICT COURT JUDGE**